## FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

**FILED**

JAMES J. WALDRON, CLERK

**March 20, 2008**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy

```
_____ :
IN RE:                       :    CHAPTER 7
                             :
JOHN PIZZUTO,                :
                             :    CASE NO. 06-15673 (NLW)
              Debtor.        :
_____  :
                             :
JOHN PIZZUTO,                :
                             :
              Plaintiff,     :    Adv. No.:    06-2696
v.                           :
                             :
INTERNAL REVENUE SERVICE,    :    OPINION
                             :
              Defendant.     :
_____  :
```

**Before:      HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Harry R. Poe, Esq.
Poe & Freireich, PA
256 Columbia Turnpike
Florham Park, NJ 07932
Counsel for Debtor/Plaintiff

Gregory S. Hrebiniak, Esq.
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 227
Ben Franklin Station
Washington, DC 20044
Counsel for the United States

Chapter 7 Debtor, John Pizzuto ("Debtor"), brought this adversary proceeding against Defendant seeking a determination that his 1995 federal income tax return is dischargeable pursuant to 11 U.S.C. § 523(a)(1)(B)(ii). A trial was held on August 22, 2007 to consider the dischargeability of the tax liability. For the following reasons, this Court has determined that the debt is not dischargeable.

## JURISDICTION

This is an adversary proceeding brought pursuant to Federal Rules of Bankruptcy Procedure 7001 *et seq*. and Section 523 of the Bankruptcy Code. This Court has jurisdiction to review and determine this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I). The following constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## ISSUE

At issue in the present matter is the means by which a debtor can prove that a mailed tax return was timely filed, when the Internal Revenue Service ("IRS") has no record of its receipt. More specifically, is a debtor limited to the methods provided by 26 U.S.C. § 7502, or may the debtor adduce extrinsic evidence to prove that the return was timely filed?

## BACKGROUND

Debtor filed a voluntary chapter 7 bankruptcy petition on June 22, 2006. Three months later

2

the Debtor commenced an adversary proceeding to obtain declaratory relief fixing the filing date for

his 1995 federal income tax return (the "Return") as on or about July 31, 1998.  (Complaint ¶ 8.)

In its answer the IRS maintains that the Return was not filed until July 26, 2004. (Answer ¶ 9.)  The

date on which the Return was filed is critical because the assessed liability for the Debtor's unpaid

1995 income taxes amounts to $420,369.61, plus interest, and the Debtor hopes to discharge the

entire liability.

     The Debtor was the only witness at the trial. His testimony focused on his remembrance of

when he obtained the Return from his accountant, and the circumstances under which the Return

was mailed.  The Debtor testified that he did not timely file the Return because his accountant was

not well. (Trial Tr. at 6, Aug. 22, 2007.)  He further testified that he obtained the Return on July 31,

1998 after repeated calls to the accountant:

> I kept calling him, and eventually I got a hold of him when he got a
> little better, and I just kept calling and saying, hey, I – this is the first
> time I didn't file, and, you know, when am I going to do it?  And I
> think in "98, I think we looked it up, it was, like, July 31st, '98.  I
> went to his house to pick up the papers, signed them.

(Trial Tr. at 6-7.)  The Debtor initially recollected that he mailed the Return on July 31, 1998.

(Trial Tr. at 7.)  However, he subsequently speculated that he may have taken the Return home to

review it, and thereafter mailed it on August 1, 1998.  (Trial Tr. at 8.)  On cross-examination the

Debtor stated that he was able to recall July 31, 1998 as the date on which the Return was filed

because that date was typed on the Return and it refreshed his memory.  (Trial Tr. at 10.)  However,

the Debtor's memory was not as clear regarding the following year's tax return.  When queried by

counsel for the IRS as to when he filed his 1996 federal tax return, the Debtor guessed that he filed

it on time, but stated that it was hard for him to remember.  (Trial Tr. at 10.)

The Debtor testified that he personally took the Return to the post office. (Trial Tr. at 8.)
He did not give the Return to a postal service employee, but instead put it in a mailbox. (Trial Tr.
at 9.) The Debtor also testified that no one accompanied him to the post office. (Trial Tr. at 8.)
Debtor testified that he affixed postage to the envelope and that it was a common practice between
Debtor and his accountant to always ensure that proper postage was affixed to the envelope before
he left the accountant's office. (Trial Tr. at 8-9.) Although not sure, the Debtor stated that he
believed that his return address was placed on the envelope. (Trial Tr. at 8.) The envelope was not
returned and Debtor stated that he had no reason to suspect the return was not filed. (Trial Tr. at
9.)

Debtor's counsel also contends that the court may alternatively consider the Return to have
been filed on June 3, 2002 when the Debtor's counsel transmitted the Return to Special Agent Zito,
of the Criminal Investigation Division of the IRS. (Plaintiff's Ex. 2.) Counsel for the IRS counters
that at best the Return was filed on July 26, 2004, when it was supplied along with an Offer in
Compromise to a Revenue Officer at the Collection Division, Offer in Compromise Group, in
Oklahoma City. That Revenue Officer then forwarded the Return to the Memphis Service Center
where it was received and date stamped July 29, 2004. (Defendant's Ex. 1.) IRS counsel stated
that the IRS chose to treat the July 26th date as the filing date in order to provide a benefit to the
Debtor.

## DISCUSSION

In order to discharge his income tax debt, the Debtor relies on 11 U.S.C. § 523(a)(1)(B)(ii)

which provided at the time his case was commenced,[1] in relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—(1) for a tax or a customs duty . . . (B) with respect to which a return, if required . . . (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition;

11 U.S.C. § 523(a)(1)(B)(ii).  Pursuant to the statute, a debtor's tax liability is excepted from discharge if the tax return was filed after its due date, and the tax return was filed within two years of the filing of the bankruptcy petition.  Conversely, if the debtor filed his tax return more than two years before the commencement of the bankruptcy case, the tax debt will be discharged despite the fact that the tax return was filed late.

Therefore, this Court must decide if the Debtor filed the Return before June 23, 2004, since his bankruptcy petition was filed on June 22, 2006.  If this Court determines that Debtor filed his return in 1998 or with Special Agent Zito in 2002, his tax debt can be discharged.  On the other hand, if this Court finds that the 1995 return was filed on July 26, 2004, as the IRS claims, the debt will not be discharged.

## I.   26 U.S.C. § 7502

The crux of both parties' arguments involves application of Internal Revenue Code § 7502, and whether the statute provides the exclusive means for demonstrating that a tax return was timely mailed, and therefore, timely filed.  Essentially, Debtor argues that § 7502 has not supplanted the

---

[1]Section 523 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23. Mr. Pizzuto's bankruptcy case was filed before the effective date of BAPCPA and so this Court will analyze this issue under § 523 as it existed at the time of filing.

mailbox rule and that his proof of mailing the tax return is proof of receipt by the IRS. Debtor

argues that his testimony that he mailed the Return on either July 31, 1998 or August 1, 1998 is

sufficient for this Court to accept that it was filed on either of those dates. Alternatively, Debtor

claims that the receipt in 2002 of a copy of the Return by Special Agent Zito, an agent of the IRS,

was a filing for purpose of bankruptcy.

On the other hand, the IRS argues that § 7502 did supplant the mailbox rule and is a tax

filer's only recourse. Since Debtor can neither satisfy the statute nor fall into any exception set out

in subsection (c) of the statute, the IRS contends that his 1998 mailing is not a filing of the Return.

Also, the IRS contends that the receipt of a tax return by an internal revenue agent such as Special

Agent Zito is not a filing. Therefore, the IRS claims, the 1995 return was filed on July 26, 2004.

Prior to passage of § 7502, the Supreme Court determined that "filing . . . is not complete

until the document is delivered and received. . . . A paper is filed when it is delivered to the proper

official and by him received and filed." *United States v. Lombardo*, 241 U.S. 73, 76 (1916). This

ruling by the Supreme Court is commonly described as the physical delivery rule. *E.g., Sorrentino*

*v. IRS*, 383 F.3d 1187, 1190 (10th Cir. 2004); *Thomas v. United States*, 166 F.3d 825, 829 (6th Cir.

1999). The Tenth Circuit in *United States v. Peters*, applied this "physical delivery rule" to a tax

refund suit, rejecting application of the common law mailbox rule.[2] 220 F.2d 544, 545 (10th Cir.

1955). Under *Lombardo* and *Peters*, Taxpayers were deemed late filers if their documents were

received by the IRS after the due date, even if they timely mailed the documents before the due date.

Recognizing the concern of taxpayers that differences in transit time, depending on where

---

[2]The common law mailbox rule creates the rebuttable presumption that a mailed
document that is properly addressed and carrying the proper postage is received. *E.g., Anderson
v. United States*, 966 F.2d 487, 489 (9th Cir. 1992).

the documents were mailed, could affect the timeliness of receipt, Congress enacted § 7502 in 1954.

Internal Revenue Code of 1954, ch. 736, 68A Stat. 895. Initially, the statute applied only to

documents other than tax returns. *See id.* Congress amended the statute to include tax returns in

1966. Act of Nov. 2, 1966, Pub. L. No. 89-713, §5(a), 80 Stat. 1107, 1110.  The statute essentially

contains two exceptions to the physical delivery rule.  Section 7502(a)(1) applies when a document

is mailed prior to the due date, but received by the IRS after the date has expired.  The statute

provides in pertinent part that "the date of the United States postmark stamped on the cover in which

such return ...  is mailed shall be deemed to be the date of delivery or the date of payment, as the

case may be." 26 U.S.C. § 7502(a)(1).

The second exception, § 7502(c) is crafted to apply to documents sent by registered or

certified mail, or by filing electronically.  It states

> (c)    Registered and certified mailing; electronic filing.
>
> (1)    Registered mail. For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States registered mail--
>> (A)    such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and
>> (B)    the date of registration shall be deemed the postmark date.
>
> (2)    Certified mail; electronic filing. The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail and electronic filing.

26 U.S.C. § 7502(c).

The statute is silent regarding whether delivery of a tax return or other document can be

7

proved by means other than the two exceptions to the physical delivery rule set forth in § 7502(a)(1)

and § 7502(c).   Consequently, courts have reached divergent results on the question of how a

taxpayer may prove delivery when the taxpayer claims to have timely mailed the document, but the

agency has no record of timely receipt of the tax return or other document.   Indeed, there is a split

among the Circuits as to whether § 7502 creates the only exception to the physical delivery rule.

Some Circuits have held that § 7502 supercedes the mailbox rule, and without a postmark, the

physical delivery rule applies in situations where the exceptions in subsection (c) regarding

registered and certified mail, and electronic filing do not apply.   *See Miller v. United States*, 784

F.2d 728 (6th Cir. 1986); *Deutsch v. Comm'r*, 599 F.2d 44 (2d Cir. 1979). They reason that if the

mailbox rule applied, then the exceptions explicitly stated in subsection (c) would be meaningless.

By contrast, other Circuits have held that the mailbox rule still applies and that extrinsic evidence

of mailing will create a rebuttable presumption of filing.   *See Anderson v. United States*, 966 F.2d

487 (9th Cir. 1992); *Estate of Wood v. Comm'r*, 909 F.2d 1155 (8th Cir. 1990). They conclude that

Congress did not clearly manifest an intent to displace the mailbox rule in enacting § 7502, and

therefore it still exists for purposes of filing a tax return.

In *Deutsch*, the Commissioner of the IRS moved to dismiss Deutsch's letter petition to the

Tax Court on various grounds, including that the petition was not timely filed.  599 F.2d at 45.   In

response, Deutsch offered his accountant's affidavit and testimony that the letter was timely mailed.

*Id.*   The Tax Court nonetheless dismissed the petition as untimely.   *Id.*

On appeal to the Second Circuit Deutsch argued that his accountant's testimony established

that the letter petition was timely mailed.   *Id.*   Deutsch also argued that this evidence was

appropriate because where the exceptions to the physical delivery rule set out in § 7502 do not

8

apply, a taxpayer can prove timely delivery by other means. *Id.* at 46.  In rejecting Deutsch's argument the Second Circuit noted that other courts have declined to consider testimony or other proof as evidence of mailing, and observed that "[t]he exception embodied in section 7502 and the cases construing it demonstrate a penchant for an easily applied, objective standard." *Id.*

In *Miller,* the IRS maintained that it never received the taxpayer's claim for a refund. *Miller*, 784 F.2d at 729.  The taxpayer provided his attorney's affidavit to establish that the refund claim was timely mailed. *Id.*  He also argued that the exceptions in § 7502 did not bar him from using other exceptions created by the courts, particularly the mailbox rule. *Id.* at 730. The Sixth Circuit found otherwise, holding that the only exceptions to the physical delivery rule are found in § 7502. *Id.* at 731.

Though not precisely on point, the case of *Boccuto v. Commissoner*, 277 F.2d 549 (3d Cir. 1960) suggests that the Third Circuit would likewise hold that § 7502 provides the only exceptions to the physical delivery rule.   In that matter the timeliness of the Boccutos' petition for redetermination of tax deficiencies and penalties was at issue.  The Boccutos demonstrated that on the last day for filing their petition, they delivered their petition to the post office and obtained a certified mail receipt dated February 11, 1959. *Id.* at 551.  At the hearing before the Tax Court, the Commissioner produced an envelope dated February 12, 1959.  The question for resolution was whether the date of the certified mail receipt or the postmark controlled for purposes of timeliness of the petition.

At the time that the Boccutos mailed their petition by certified mail the regulations

authorized by § 7502(c)(2) for application to certified mail had not yet been implemented.[3] *Id.* at 553. Accordingly, the Third Circuit found that the certified mail receipt held no significance, and that the postmark stamped on the envelope controlled. *Id.* In connection with that determination, the court stated "Congress has explicitly set forth the allowable exceptions to the rule of actual receipt by the Tax Court within the specified time. Unless a taxpayer can fit himself within one of the statutory exceptions, he is bound by this rule." *Id.*

Courts within the Third Circuit have interpreted *Boccuto* as holding that mailbox rule has been supplanted by § 7502. *See Labendz v. IRS*, No. Civ. 06-3781, 2007 U.S. Dist. LEXIS 9560, (D.N.J. Feb. 9, 2007); *Philadelphia Marine Trade Ass'n/Int'l Longshoremen's Ass'n Vacation Fund v. United States*, No. Civ. 04-4857, 2006 U.S. Dist. LEXIS 48263 (E.D. Pa. July 17, 2006); *Poindexter v. IRS*, No. Civ. 96-4404, 1997 U.S. Dist. LEXIS 6902 (E.D. Pa. Apr. 29, 1997); *Bazargani v. United States*, No. Civ. 91-4709, 1992 U.S. Dist. LEXIS 11448 (E.D. Pa. Jul. 29, 1992) *aff'd* 993 F.2d 223 (3d Cir. 1993).

Other Circuits have taken a different approach by finding the mailbox rule is not superceded by § 7502. "Instead, these courts have viewed the issue as an evidentiary matter, holding a taxpayer to a strict standard of proof before invoking a presumption of receipt. Self-serving declarations of mailing, without more, are insufficient to invoke the presumption." *Sorrentino v. IRS*, 383 F.3d 1187, 1191 (10th Cir. 2004)(Baldock, J.). For instance, the Eighth Circuit held the testimony of both the attorney who mailed the return and the postal worker who accepted the mailing was sufficient to show a timely mailing in *Estate of Wood v. Commissioner*, 909 F.2d 1155 (8th Cir. 1990). In

---

[3]It appears that at the time that the Boccuto's mailed their petition, mail was certified at the post office, but returned to the sender for mailing. 277 F.2d at 552 n.2.

10

finding that Congress did not intend to eliminate the mailbox rule in cases where the postmark can be established by other means, the Court relied on the "normal rule of statutory construction . . . that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Id.* at 1160 (quoting *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986)).

In adopting the reasoning of *Wood*, The Ninth Circuit allowed an even less rigorous evidentiary showing in *Anderson v. United States*, 966 F.2d 487 (9th Cir. 1992). In that case, the District Court found that proof of timely delivery was shown through (1) the direct testimony of the taxpayer that the return was mailed at the post office; and, (2) an affidavit by the taxpayer's friend stating that she accompanied the taxpayer to the post office, waited in the car, observed the taxpayer go into the post office with the tax return and later return without it. *Id.* at 489. Although it observed that the evidence seemed somewhat self-serving, the Ninth Circuit did not overrule the District Court's credibility determination. *Id.* at 492. The statements of each witness corroborated the other's.

This court does not need to choose between the approaches that divide the Circuit Courts, because even under the evidentiary showing adopted by *Woods* and *Anderson*, the Debtor cannot meet his burden. The Debtor presents uncorroborated, self-serving testimony, and no Circuit Court has allowed such testimony to sustain a finding of timely mailing. *See, e.g., Sorrentino v. IRS*, 383 F.3d 1187, 1195 (10th Cir. 2004)(Baldock, J.)(finding the taxpayer's "self serving testimony, without corroborating evidence [was] insufficient"); *Davis v. United States*, No. Civ. 99-5073, 2000 U.S. App. LEXIS 2302, at *7 (Fed. Cir. Feb. 16, 2000)(holding the taxpayer's uncorroborated testimony would not suffice "under any view of the law"); *Wade v. Comm'r*, Nos. Civ. 98-9001, 98-

11

9002, 1999 U.S. App. LEXIS 7980, at *6-7 (10th Cir. Apr. 26, 1999)(finding taxpayer's self-supporting testimony that he remembered mailing his return immediately before lunch with his accountant was "not nearly enough evidence"). At trial, the Debtor testified that the Return was late because his accountant "had been unwell" and that in 1998 he finally picked up the Return from the accountant and delivered it to the post office for mailing. (Trial Tr. 6-8.)  He provided no other evidence that the Return was mailed on time. For example, he did not provide corroborating testimony from the accountant.  Accordingly, this Court cannot find that Debtor filed the Return on either July 31 or August 1, 1998.

### II.    McTear

At trial, and in his post-trial brief Debtor argued that *McTear v. IRS*, No. 93-21401, 1994 WL 389469 (Bankr. E.D. Pa. May 20, 1994) was directly on point to the issue presented here. That case, however, involved hand delivery and application of § 7502 was explicitly rejected by the Court. *Id.* at *3. This case is not a hand delivery case and *McTear* is inapposite. Nevertheless, even if this Court was to follow the guidance of *McTear*, it could still not find for Mr. Pizzuto. The evidence produced by the debtors in that case consisted of their testimony that the return was hand delivered to the IRS and an exhibit of the IRS showing their tax return was received on time. *Id.*

### III.    Delivery of the Tax Return to Special Agent Zito

Debtor's counsel attempts to argue that counsel's forwarding of a copy of the Return to Special Agent Zito in 2002 corroborates the Debtor's claim that he mailed the Return in 1998. *Id.* at 29. However, this is not proof that the Debtor mailed the Return in 1998. It is not even proof that

he ever mailed the return to the proper address. It is only evidence that a return had been prepared by 2002, and that a copy had been sent to Special Agent Zito.

Debtor also contends that receipt of a copy of the Return by Special Agent Zito in June 2002 is evidence that the return was filed before the deadline in 2004. There was no testimony by Special Agent Zito, but counsel for the IRS advised that Special Agent Zito was conducting a criminal investigation. Debtor's counsel did not dispute this.[4]  *Id.* at 35-36.  Special Agent Zito's receipt of a copy of the Return, however, is not a filing under either the Tax Code or Regulations. An individual's return "shall be made to the Secretary (i) in the internal revenue district in which is located the legal residence or principal place of business of the person making the return, or (ii) at a service center serving the internal revenue district referred to in clause (i), as the Secretary may by regulations designate." 26 U.S.C. § 6091(b)(1)(A). The Regulations provide that the tax return of an individual "shall be filed with *any person assigned the responsibility to receive returns at the local Internal Revenue Service office* that serves the legal residence or principal place of business of the person required to make the return." 26 C.F.R. § 1.6091-2(a)(emphasis added). Debtor has made no showing of the location for filing the return, or that Special Agent Zito was located at a service center or local IRS office and had the responsibility to accept a return as filed.

Case law also supports the holding that giving a delinquent return to an internal revenue agent is not a filing.  *W.H. Hill Co. v. Comm'r*, 64 F.2d 506 (6th Cir. 1933); *Espinoza v. Comm'r*, 78 T.C. 412, 419-20 (1982); *Green v. Comm'r*, 65 T.C.M. (CCH) 2347 (1993).  "It is no part of the

---

[4]The statements of counsel of course cannot be considered evidentiary with regard to the nature of Agent Zito's investigation.  However, the court considers the statement solely for the purpose of establishing that both parties agree that Special Agent Zito received a copy of the Return in June 2002.

duties of an internal revenue agent or of an internal revenue agent in charge to file returns for

taxpayers. That is the duty which law places on the shoulders of the taxpayers." *W.H. Hill Co. v.*

*Comm'r*, 23 B.T.A. 605, 607 (1931).  Putting the burden of filing on the taxpayer and not on the

revenue agent conducting an investigation is for the purpose of "facilitating the prompt and orderly

assessment and collection of taxes." *W.H. Hill*, 64 F.2d at 507.  Therefore, Special Agent Zito's

receipt of the Return is not a filing for purposes of § 523.[5]


## CONCLUSION

This Court finds that Debtor did not file his 1995 federal tax return until July 26, 2004—the

earliest date stamped on the copy of the return the IRS produced as evidence. Since the return was

late-filed within two years of Debtor's bankruptcy petition of June 22, 2006, the debt is non-

dischargeable pursuant to 11 U.S.C. § 523(a)(1)(B)(ii).


Dated:  *March 20, 2008*                    *Novalyn L. Winfield*
                                            NOVALYN L. WINFIELD

---

[5]With the passage of BAPCPA, § 523 was amended to allow for the discharge of late
filed returns that were filed *or given* within two years of the filing of the bankruptcy petition.
Since this case arose pre-BAPCPA, there is no need to determine whether the return was given
to the IRS when Special Agent Zito received it.